### ANDRES LOPEZ V. STATE

No. 33,622.   October 25, 1961
Motion for Rehearing Overruled January 3, 1962

*John B. Luscombe, Jr.,* and *Grover Stephens* (Court-appointed) El Paso, for appellant.

*Edwin F. Berliner,* District Attorney, El Paso, and *Leon Douglas,* State's Attorney, Austin, for the State.

BELCHER, Judge.

The conviction is for murder; the punishment 25 years.

The indictment was returned September 6, 1960, and trial was had on February 13, 1961.

It is undisputed that the appellant was 15 years of age on the date of the killing on November 20, 1958. The court in the charge to the jury gave effect to the provisions of Artcile 31, P.C.

The evidence shows that Miguel Ramos, the deceased, was a farm worker on the Guerra ranch which was located alongside the Rio Grande River in Hudspeth County, but that he lived on the Mexican side of the river and commuted by donkey, using a wooden handmade saddle with gunny sacks for padding.

Before and on November 20, 1958, the appellant was also a laborer on the Guerra ranch where he lived with his father and mother. He knew the deceased, where he lived, and the way and manner he traveled to work. It was generally known that the deceased was thrifty and carried money on his person.

The deceased was last seen alive about sunset on Thursday, November 20, leaving the Guerra ranch by himself in the direction of the river. Two persons going to work on the Guerra ranch, Sunday, November 23, after crossing the river, saw deceased's saddle, which they recognized, and some bloody gunney sacks in the brush. They noticed a "trial dragging" and tracks which led them beyond a freshly cut fence to a place where the deceased's body was later discovered to be buried. The officers were immediately notified, and they went to the scene where they saw a saddle, "drag marks," and a freshly cut fence. They disinterred a body which had the clothing pulled over the head which was identified as that of Miguel Ramos.

An autopsy on the body of Ramos showed that he had been shot in the back with a small caliber gun and a short time later shot in the back of the head. The physician also testified to marks on the body which were indicative of the dragging of the body.

The testimony shows that, while accompanied by the officers, the appellant identified the .22 rifle he used to shoot the deceased, the pliers with which he cut the fence, the grave in which he placed deceased's body, and the shovel used to dig it. He also pointed out the place he had hidden the money that he removed from the body, which was the same place his mother testified that she found it.

The written statement of the appellant, witnessed by his brother and sister-in-law, was introduced in evidence by the state, in which he describes in detail the facts and circumstances surrounding the killing. In it, he admits killing the deceased by shooting him twice with a .22 rifle, then removing about $200 from the body before burying it.

The appellant did not testify but showed by the record of the Texas Youth Council that on March 24, 1959, the state filed a petition alleging him to be a delinquent child; that he was so adjudged March 30, and was received by the Council at Gatesville on April 28. He also offered proof that he was given lie

detector tests at the El Paso Police Department on March 6 and March 9 and their record was marked "held for murder"; and on April 13, it shows "hold for Gatesville." The county attorney of Hudspeth County testified that he filed the petition; that the appellant was not tried for murder and there was no evidence introduced showing murder on the trial at which he was adjudged a delinquent child.

The petition filed in the Juvenile Court alleged that appellant was "an incorrigible child, * * * did habitually run away from home, and habitually pursued an unlawful course of conduct, * * * *." (Article 514a V.A.C.S.) There was no evidence introduced of the murder of Miguel Ramos on the hearing of the petition. The judgment of conviction followed the pleadings and the evidence in adjudging him to be a juvenile delinquent.

Appellant insists that the trial court was without jurisdiction because of his previous conviction for the same offense under the Juvenile Delinquency Act; that such conviction is a bar to this prosecution on the ground of double jeopardy or under the due process clause of the United States Constitution.

Similar contentions were presented, fully discussed and overruled in the recent holdings of this Court in Wood v. State, No. 33,278 (page 307, this volume) and Hultin v. State, No. 33,515 (page 425, this volume). These cases are here controlling and the above contentions are overruled.

Appellant contends that the court erred in permitting the state, upon pleading surprise, to impeach its own witness, Marcella Lopez, the mother of appellant, by asking her if in the written statement she made to officers she said: "After I had found the money, I began to wonder if maybe Andres (appellant) had killed Miguel Ramos." To which appellant also objected on the ground that it was a conclusion and a conjecture.

While testifying for the state, Marcella Lopez admitted that she signed a statement by making a mark in the presence of her son, Domacio Lopez, and his wife, in which she stated that shortly after Christmas, in 1958, she found some money in the roof of an outside toilet after she had seen the appellant go to the outside toilet, but she denied saying that she saw him take anything from his pocket and hide it on the roof of the toilet. She further denied saying that "After I had found the money, I

began to wonder if maybe Andres (appellant) had killed Miguel Lopez." The statement referred to during the examination of Marcella Lopez was never introduced in evidence.

To constitute the impeachment of which the appellant complains, it would be necessary for the state to support the predicate laid, either by the introduction of the written statement or by an affirmative showing that the written statement contained such matter. In the absence of such proof, her denial of making such statement was not contradicted. Therefore, the matter of her impeachment is not presented. Bailey v. State, 37 Tex. Cr. Rep. 579, 40 S.W. 281; Robbins v. State, 162 Tex. Cr. Rep. 107, 282 S.W. 2d 711. For the same reason, the objection that such statement is a conclusion or conjecture is not presented.

It is insisted that the trial court erred in admitting the oral statements pertaining to the killing made by the appellant to the officers on their trips to the bosque near the river, on the ground that the appellant was under arrest.

The testimony shows that the officers did not know the identity of the particular instruments used in connection with the killing until the appellant pointed out and identified the shovel with which he dug the grave, and the .22 rifle he used to kill him. This testimony, under the provisions of Article 727 C.C.P., authorized the admission in evidence of the oral statements. Smith v. State, 157 Tex. Cr. Rep. 637, 253 S.W. 2d 665.

Appellant strenuously insists that his written statement introduced by the state was inadmissible as a matter of law on the ground that it was illegally obtained.

The issue of the involuntary character of the written statement was submitted by the court in its charge to the jury.

The appellant did not testify, but he offered the following evidence in support of his contention that the written statement was illegally obtained from him. After the killing of the deceased on November 20, 1958, the appellant was arrested without a warrant about 10 P.M., March 3, 1959, and placed in jail at Sierra Blanca. On March 6, appellant was taken to the El Paso Police Department and given a lie detector test, and then placed in the El Paso County Detention Home. He was given another lie detector test on March 9, and returned to the Detention Home.

The records of the El Paso County Detention Home show that he was there from March 6 to March 30, although one witness thought that he was returned to Sierra Blanca on March 10. The El Paso Officers, Ranger Nance, and the officers of Hudspeth County talked frequently with the appellant, mostly at night and usually for an hour or an hour and one-half. On March 24, 1959, a petition was filed to declare appellant a juvenile delinquent. From March 3, the appellant was not taken before any magistrate or judge of any court until he appeared before a juvenile judge on March 30, and was declared to be a delinquent child. He made no request for an attorney, and first conferred with one when the court appointed counsel to represent him after the indictment was returned in this cause. It was shown that appellant had only a meager education.

About 9 P.M., March 30, Ranger Nance and Deputy Sheriff Calmenero left with the appellant, going to the scene of the killing which was about 35 miles from Sierra Blanca. They arrived about 10 P.M., at the scene of the grave pointed out by the appellant, which was in a bosque — a salt water thicket. While there, he showed the officers a shovel with which he said he dug the grave, and a photograph was taken of the appellant in or at the edge of the grave. They returned appellant to jail about 1 A.M. The next morning, March 31, Officers Nance and Calmenero, with the appellant, returned to the scene of the killing. On this trip, the appellant obtained and identified a .22 rifle he said he used to kill the deceased. He was returned to jail. Thereafter, on April 7, he made and signed a written statement in which he admitted killing the deceased, and it was witnessed by his brother and sister-in-law.

The proof shows that the appellant, while in custody, was not abused, mistreated, threatened, or questioned continuously or in relays, or was made any promises which induced the making and signing of the statement. The members of his family were permitted and did visit with him. There is no evidence that any person requested and was denied any privilege of visitation or of communication.

There must be a showing of a causal connection between the failure to secure a warrant and the taking of the accused forthwith before a magistrate, and the making and signing of a confession before it will be held inadmissible. The failure to take appellant forthwith before a magistrate when he was arrested without a warrant does not of itself vitiate his confession.

Dimery v. State, 156 Tex. Cr. R. 197, 240 S.W. 2d 293; Golemon v. State, 157 Tex. Cr. R. 534, 247 S.W. 2d 119, certiorari denied, 344 U.S. 847, 73 Sup. Ct. 60, 97 L. Ed. 659; Sampson v. State, 160 Tex. Cr. R. 302, 268 S.W. 2d 661; Gallegos v. Nebraska, 342 U.S. 55; Brown v. Allen, 344 U.S. 443; Stein v. New York, 346 U.S. 156; Lyons v. Oklahoma, 322 U.S. 596; Townsend v. Burke, 344 U.S. 736, and Stroble v. California, 343 U.S. 181, Webb v. State, 291 S.W. 2d 331, and Stickney v. State, 336 S.W. 2d 133.

It is concluded that the written statement was not illegally obtained from the appellant in violation of Articles 726, 727 and 727A of V.A.C.C.P., or of the due process clauses of our State and Federal Constitutions, and that said statement was not inadmissible in evidence as a matter of law.

The evidence is sufficient to support the conviction, and, no error appearing, the judgment is affirmed.

Opinion approved by the Court.