Maximino GARZA, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 35744.

Court of Criminal Appeals of Texas.

May 22, 1963.

Rehearing Denied June 29, 1963.

Rivera & Ritter, San Antonio, for appellant.

James E. Barlow, Dist. Atty., James E. Hope, A. J. Hohman, Jr., John G. Benavides, Asst. Dist. Attys., San Antonio, and Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Presiding Judge.

The offense is murder; the punishment, 7 years.

The sufficiency of the evidence is not challenged. It shows that on June 3, 1961, the appellant, then 16 years of age, while riding around in an automobile with Gilbert Cuellar and two other friends, came upon Antonio Rodriguez, the deceased, his brother Jesse Rodriguez and one Johnny or Tony Palacios.

After a brief exchange of words and after some rocks were thrown at the car, the appellant and Cuellar left the scene and took their friends home.

The appellant then borrowed a .22 caliber rifle and with Cuellar returned to the area where they had encountered the deceased and his companions. Cuellar was driving and as they caught up with the trio who were on foot, the appellant, intending to shoot Jesse Rodriguez, shot and killed Antonio Rodriguez, the deceased.

Complaint was filed charging the appellant with the murder. He was turned over to the Bexar County Juvenile Department on June 6, 1961, after the magistrate, Judge A. A. Semaan, found that he was under 17 years of age.

The Criminal District Attorney of Bexar County then signed a petition which was filed in the 150th District Court of Bexar County sitting as a juvenile court on June 14, 1961, representing that the appellant appeared to be a delinquent child, the only ground or reason alleged being that on or about June 3, 1961 he voluntarily and with malice aforethought killed Antonio Rodriguez by shooting him with a .22 caliber rifle.

On June 29, 1961, the district attorney filed his first amended motion for non-suit, the record showing that he had previously sought to withdraw his petition without success.

His amended motion for non-suit was overruled "for the sole and only reason that the granting of same would have the effect of circumventing the Juvenile Court Act of the State of Texas, Art. 2338–1, Vernon's Annotated Civil Statutes, and would rob the court of jurisdiction to hear said cause."

When the case came on for trial in the Juvenile Court, the district attorney filed motion to dismiss for want of jurisdiction, contending that because of the timely filing of his motion for non-suit the court had lost its jurisdiction.

His motion to dismiss being overruled, the district attorney filed motion for continuance in which certain portions of Art. 2338–1 were quoted and it was alleged that if the cause proceeded to trial "The State of Texas would be forever after precluded from prosecuting said juvenile as an adult for the same offense alleged in the petition herein."

His motion for continuance being overruled, the district attorney proceeded to trial "under fear of contempt of court and attending penalties," stating "We feel that by continuing to proceed in this juvenile hearing that we would thereafter be precluded to try this juvenile as an adult within 5 or 6 months from now."

Trial before a jury empaneled on the court's motion resulted in a verdict, returned July 21, 1961, finding the appellant to be a delinquent child.

Judgment was rendered upon the jury's verdict on July 24, 1961, and it was ordered that the appellant herein be committed to the care, custody and control of The Texas Youth Council for an indeterminate period of time not to exceed the time he shall have become 21 years of age, and it was ordered that the appellant be conveyed to the Gates-

ville State School for Boys, Gatesville, Texas.

The record shows that the judgment was complied with and the appellant herein was taken to Gatesville where he remained in custody and under the control of the State School for Boys until after he had reached the age of 17 and had been indicted for the murder of Antonio Rodriguez.

The district attorney perfected appeal to the Court of Civil Appeals from the judgment of the Juvenile Court.

The Court of Civil Appeals affirmed the judgment, holding that the Juvenile Court did not abuse its discretion in overruling the district attorney's motion for a nonsuit. State of Texas v. Garza, Jr., 358 S.W.2d 749.

In the opinion of the Court of Civil Appeals it is stated, in part: "In this proceeding, the District Attorney had no personal interest or property right, and his purpose, apparently, was to prevent a hearing until Maximino Garza, Jr., had arrived at the age of seventeen years, when he might be tried as an adult, and thus defeat the jurisdiction of the Juvenile Court. This would have the effect of defeating the entire purpose of the Juvenile Act. Art. 2338-1, supra."

After the opinion of the Court of Civil Appeals was handed down, the state through the district attorney filed a motion to dismiss the appeal, alleging the facts shown elsewhere in the record herein, that pending the appeal Maximino Garza, Jr., had become an adult amenable to the penal laws and that on July 3, 1962, he "was indicted by the Bexar County Grand Jury for the offense of murder with malice, the identical offense alleged in appellant's original pleading filed in the Juvenile Court."

Appellant complains that the trial court erred. in overruling his plea of former jeopardy and his motion in arrest of judgment and here urges that the state should be prohibited from prosecuting the appellant for the same offense alleged in the petition filed in the Juvenile Court as the only basis for declaring him a delinquent child. He contends that to permit such criminal prosecution violates the 5th Amendment to the Constitution of the United States; Art. I, Section 14, of the Constitution of Texas, Vernon's Ann.St., and Art. 8 of the Code of Criminal Procedure, each of which provides that no person shall be twice put in jeopardy of life or limb.

Appellant further contends that to allow the state to prosecute him under the indictment for murder, for the identical offense alleged in the petition upon which he was tried in the Juvenile Court and adjudged to be a delinquent child, is a deprivation of due process required by the 14th Amendment to the Constitution of the United States.

Proceedings in Juvenile Court are Civil rather than Criminal in nature. Appeals are to the Court of Civil Appeals and may be carried to the Supreme Court as other civil cases. Art. 2338-1, Sec. 21, V.A.C.S.

The Court of Civil Appeals having jurisdiction to decide the matter, the question of whether the state, having invoked the jurisdiction of the Juvenile Court, should have been allowed to dismiss the case was foreclosed on appeal.

The question of jeopardy and of denial of due process by reason of prosecution under indictments for felony offenses committed while the accused was under 17 years of age and after he had been adjudged to be a delinquent child has been before this Court in a number of rather recent appeals. Wood v. State, 171 Tex.Cr. R. 307, 349 S.W.2d 605; Perry v. State, 171 Tex.Cr.R. 282, 350 S.W.2d 21; Martinez v. State, 171 Tex.Cr.R. 443, 350 S.W.2d 929; Hultin v. State, 171 Tex.Cr.R. 425, 351 S.W.2d 248; and Lopez v. State, 171 Tex. Cr.R. 552, 352 S.W.2d 106.

Only two of these decisions need be discussed, the others being cases where there was no question but that the offense charg-

ed in the indictment was not the identical offense relied upon in the Juvenile Court to establish that the juvenile was a delinquent child.

In Martinez v. State, 350 S.W.2d 929, the majority found that the subsequent shooting and killing on the driveway of the service station was a separate assault from that made inside the station by presenting a pistol and demanding that the cash register be opened, and the majority holding was that the commitment as a juvenile delinquent based upon the assault with intent to rob was not available as a defense to the murder indictment returned after the defendant reached the age of 17 years, and that no denial of due process of law or violation of the principles of fundamental fairness was shown.

Judge Morrison held to the view that the murder arose out of the attempted robbery and the offenses were the same and, in his dissent, stated what would appear to be the correct rule to be applied where the identical felony charged in the indictment was the sole ground upon which the defendant was committed and restrained as a result of the state having secured a judgment in the juvenile court finding him a delinquent child.

In Hultin v. State, 351 S.W.2d 248, Judge McDonald wrote at length and expressed his views upon the question of jeopardy. All of the Court reached the conclusion that the state was not bound by the supplemental petition filed by appellant's counsel alleging that he was a delinquent child because he had committed the murder for which he was indicted after he reached the age of 17. Our holding was that the prosecution for murder was not barred by reason of the defendant having been adjudged a delinquent child and committed and restrained under such judgment, the state's petition having alleged as ground a separate felony offense and not the murder.

We need not here concern ourselves with a consideration of the question of former conviction in a court of competent jurisdiction or of former jeopardy based upon a proceeding, civil in nature, in the Juvenile Court prior to indictment. In addition to jeopardy, denial of due process in violation of the 14th Amendment to the Constitution of the United States is presented.

The record herein shows without dispute that as a result of the state having invoked the jurisdiction of the Juvenile Court upon the allegation that the appellant herein committed the murder for which he was indicted, tried and convicted after he reached the age of 17, the appellant was committed and remained in custody and under control of the State School for Boys until he was indicted and taken into custody to answer said indictment.

It is interesting to note that the sentence was credited as for time spent in jail (Art. 768, Vernon's Ann.C.C.P.), the provision being "said sentence to begin and operate from and after the 21st day of July, A.D. 1961, the date of defendant's incarceration."

As has been stated, the verdict finding the appellant herein to be a delinquent child was returned on July 21, 1961.

To affirm this conviction in the light of the record would be to hold that, for an offense committed before he reached the age of 17 years, the offender who has committed no other offense against the law may, upon petition of the district attorney, be adjudged a delinquent child and held in custody as such, and without regard to how he may respond to the guidance and control afforded him under the Juvenile Act, be indicted, tried and convicted for the identical offense after he reaches the age of 17.

We sustain appellant's contention that such a conviction violates the principles of fundamental fairness and constitutes a deprivation of due process under the 14th Amendment.

The judgment is reversed and the prosecution ordered dismissed.

McDONALD, Judge (dissenting).

I am very pleased to have the privilege and opportunity of dissenting in this case. This is a case of first impression wherein this Court is faced squarely with the issue of double jeopardy. I had thought that Hultin v. State, 351 S.W.2d 248, was a case identical to this case, and I worked long and diligently on the opinion I wrote in the Hultin case. This Court has too long engaged in "legal fiction" in disposing of cases of this kind. It did so in Hultin when my colleagues desired to incorporate in my opinion syllabi 8 and 9 on page 256 (351 S.W.2d) which in effect held that the appellant injected the murder allegation into the juvenile hearing when he could not do so. This effectively removed the identical-offense feature from Hultin and actually caused no new pronouncements especially to be written. I unwittingly agreed to the incorporation of this suggestion, which I now regret. I am now convinced that counsel for appellant in Hultin could have properly injected into the hearing the murder allegation. He could have even filed the petition himself under the terms of Article 2338–1, Section 7, V.A.C.S. The injection of this one paragraph in Hultin caused this Court to once more follow "legal fiction" and evade the issue which was before us and also caused a concurring opinion based upon this one single paragraph. In retrospect, I regret my acquiescence to the opinion in this respect. Had we then faced the issue as we are now compelled to do, the result in Martinez v. State, 350 S.W.2d 929, in which some further "legal fiction" was engaged in, might have been different.

We have for many years held that a juvenile declared a delinquent, who was incarcerated on one charge under the Juvenile Delinquency Act and then later tried on a different charge as an adult in the district court, was not entitled to plead jeopardy in bar. Actually, in most of these determinations, had it not been for the grave felony offense committed, for which he was later tried in the district court,

many of these juveniles would never have been sent to the Youth Council at all.

Able counsel for appellant has set forth in his brief the distinction he makes between the case at bar and Hultin, supra, and Martinez, supra. I agree with his conclusions reached in making this distinction.

I made an exhaustive survey of all of the pertinent cases decided in this State by our various Courts of Civil Appeals, the Supreme Court, and this Court, so far as an interpretation of the Juvenile Delinquency Act is concerned, in my opinion in Hultin, supra. In the interest of brevity, I now adopt these citations by reference to Hultin.

In the case at bar we are dealing with an appellant who was 16 years, 6 months and 9 days old when he committed the offense of murder. In less than six months this appellant would have attained his 17th birthday and would have been amenable to the criminal laws of this state. He was declared a delinquent child for the offense of murder, then later indicted and tried for the offense of murder in the criminal district court. The question then is: Can a juvenile after attaining adulthood be prosecuted under an indictment for the identical offense relied upon in the juvenile court to establish that the juvenile was a delinquent child? We have never said until now that he could or could not. The majority opinion says that he cannot be so prosecuted, holding, in effect, that a juvenile is a special creature under our jurisprudence and the State and Federal Constitutions. We have by statute clothed the juvenile with immunity from prosecution for criminal offenses until he attains the age of 17 years. The majority opinion may well be construed and interpreted as a further grant of immunity. Many juveniles frequently tell law enforcement officers: "You can't put me in jail without the consent of the judge," or: "I can't be sent to the penitentiary because I am a child." The appellant in this case is in a fortunate position. He had no prior background of delinquency. He had committed no prior offenses such as theft or associating with

immoral persons, prior to the commission of this murder, so that the state might have alleged one of these violations as an allegation for delinquency. The state could only reply on the murder allegation, which it did; so this appellant now goes "Scot-free" and yet a boy his same age who has previously stolen some minor item might have to remain at the Gatesville State School for Boys or go back there if he does more stealing, but a minor thing like murder is not on a parallel basis!

Appellant has cited many cases in his brief. Among them he cites and relies upon Trimble v. Stone, 187 F.Supp. 483, a case involving the right of a juvenile to bail in a case pending in the juvenile court, decided by the United States District Court, Washington, D.C.

In re Poff, 135 F.Supp. 224, a case decided also by the United States District Court for the District of Columbia, is also cited. This case was based upon a writ of habeas corpus petition in that court wherein the petitioner said that the sentence imposed by the juvenile court was unconstitutional inasmuch as he was not advised of his right to counsel, a right guaranteed him under the Sixth Amendment. The court released the petitioner.

United States v. Dickerson, 168 F.Supp. 899, another case from the United States District Court for the District of Columbia, is also cited. In this case the defendant moved to dismiss an indictment on the ground of former jeopardy. The court held that jeopardy applied to juvenile proceedings and that the jurisdiction of the juvenile court attached and respondent could not thereafter be prosecuted on the same charge. *BUT,* this case was appealed by the Government, and the case was reversed by the United States Court of Appeals, District of Columbia Circuit, cited as United States v. Dickerson, 106 U.S.App. D.C. 221, 271 F.2d 487. The court said in its opinion:

"Without deciding whether jeopardy can ever attach to a disposition made by a juvenile court, either because the Constitution is directly applicable or because subsequent proceedings would be 'fundamentally unfair,' we hold that in the circumstances of this case *no jeopardy attached as a result of proceedings in the Juvenile Court.*"

In effect, then, appellant only cites us three cases decided by a federal district court (not an appellate court, nor a court of last resort, but the inferior tribunal in the Federal System), which in their scheme of things, reports the decisions of these district trial courts, and yet the only appellate decision cited by him overrules the one case that he relies upon for his jeopardy theory.

While it is true that the jeopardy provisions of our state and federal constitutions are self-executing, yet it still remains the task of our courts to construe these provisions in the light of the facts in each case and not assume that because some district court in Washington, D. C., decides that a juvenile is entitled to counsel or to bail that he may, by analogy, be entitled to effectively plead double jeopardy because two district courts say that "when he is entitled to some of the benefits he is as a general rule entitled to all of them." I do not subscribe to this reasoning, or to this premise. One of the prime considerations of jeopardy is jurisdiction. Did the first forum have jurisdiction of the person and the offense? I don't think the juvenile court had jurisdiction of the offense of murder. It had jurisdiction of the person, a juvenile delinquent. The majority are in effect saying that jeopardy lies regardless of whether or not it attached in a forum having jurisdiction of the offense, whether or not an indictment was preferred, whether or not the court trying the case had any jurisdiction at all in criminal matters. To me, it would be about as sensible for a defendant to come into the district court where he was to be tried for murder by automobile and set up a plea of jeopardy in bar of the prosecution for the reason that he had previously been sued for damages for the death of the person he killed,

in a civil court, and had received a favorable verdict at the hands of the jury. This is about as far as the double jeopardy doctrine is being stretched by the majority opinion. They are saying that although the Juvenile Act is a civil statute, appeals are taken to the Court of Civil Appeals, the proceedings in delinquency are civil and not criminal, yet in this case it is different and jeopardy lies.

In Texas, the juvenile court has no statutory authority to waive jurisdiction to the district court in any case, regardless of the gravity of the offense, but in most of our states this may be done. Our juvenile court is unlike that of most jurisdictions in this respect. The juvenile court judge in the District of Columbia may waive jurisdiction and thus transfer a murder or rape case from his docket to that of the district court. By being vested with this authority, he does have the discretionary right to make an initial determination of a felony offense and decide to retain the case as a juvenile court case or transfer it to the district court for prosecution as a felony case. This distinction in the jurisdiction of juvenile courts might give the semblance of felony jurisdiction to the juvenile courts of the District of Columbia, but I attach little credence to it and merely make mention of it.

When a juvenile can shield himself from prosecution by virtue of his juvenility and the fact that the juvenile court has jurisdiction over him, how, then, can it be fair to allow him to later come forth and claim immunity and double jeopardy because of the action of a civil court into whose custody he was protectively given, was not tried as a felon or an adult, and yet make the claim that he was so tried, when his actual felony trial is had?

Had he insisted upon being tried originally in the district court instead of the juvenile court, he could not have been unless he lied about his age. These fundamental rights brought forth by appellants

frequently inure to the individual, not to society. By the same token, the Juvenile Delinquency Act was written by our Legislature, not especially for society, but for the children of this State. Society and the public at large have a stake in both the Bill of Rights and all of the other safeguards of individual liberty contained in both our State and Federal Constitutions and also in our Juvenile Delinquency Act.

My concept of the preservation of individual liberty is not so keen as some. I think that this Court and every Court should zealously guard the rights of individuals, but these Courts should also guard the rights of society and the public at large. I am not yet ready to make an elastic interpretation in this case, as has been done by the majority, and apply the doctrine of double jeopardy to a case of this kind and turn loose on society a murderous felon who has been duly convicted in a fair and impartial trial by a learned trial judge and who then obtains his freedom by this Court on a spurious claim of jeopardy. I obviously dissent and would affirm this conviction were it in my power to do so.

## ON STATE'S MOTION FOR REHEARING

DICE, Commissioner.

In its motion for rehearing, the state insists that we were in error in holding the appellant's conviction in violation of the principles of fundamental fairness and a deprivation of due process under the Fourteenth Amendment, but contends in oral argument that the proceedings in juvenile court constituted former jeopardy.

It is argued that if the reversal on the ground of fundamental fairness and deprivation of due process is allowed to stand, the cases of Wood v. State, Tex.Cr.App., 349 S.W.2d 605; Martinez v. State, Tex.Cr. App., 350 S.W.2d 929; Perry v. State, Tex. Cr.App., 350 S.W.2d 21, and Hultin v. State, Tex.Cr.App., 351 S.W.2d 248, should be

expressly overruled. With such contention we do not agree.

In the Wood, Perry, and Hultin cases, and, as found by the majority in the Martinez case, the conviction and resulting restraint of each accused was for a different act and offense from that for which he had been previously adjudged a delinquent child. Under such facts, the convictions and restraint thereunder did not violate the principles of fundamental fairness and constitute a deprivation of due process.

In the present case it is undisputed that the appellant's conviction for murder is for the same act and offense for which he was, upon petition of the district attorney, adjudged a delinquent child and confined in the state school for boys. Under such facts, the conviction does violate the principles of fundamental fairness and constitutes a deprivation of due process and equal protection of the law.

Responding to the inquiry of the district attorney, we are aware of no reason why the appellant may not be returned to the custody of the Texas Youth Council.

Remaining convinced that a proper disposition was made of the case on original submission, the state's motion for rehearing is overruled.

Opinion approved by the Court.

McDONALD, Judge (dissenting).

While I set forth my views fully in my dissenting opinion, I did take the position that this case was presented to us on the sole question of former or double jeopardy.

As pointed out in the majority opinion on rehearing, the case was decided by the majority holding appellant's conviction in violation of the principles of fundamental fairness and a deprivation of due process under the Fourteenth Amendment. In its motion, the State says that the Court was in error in so deciding, and the State urges the Court to decide the case on the basis of former jeopardy. And yet, the State, through its assistant District attorney, admitted in oral argument before this Court that the trial court's action did constitute former jeopardy. This line of reasoning on the part of the State virtually amounts to a confession of error and leaves the writer with little support. Regardless, I still feel constrained to once more express my views.

To me, the basic difference between the majority opinion and the State's contention on rehearing may be summarized as meaning that the majority feels that the appellant's conviction was in violation of the principles of fundamental fairness and a deprivation of due process under the Fourteenth Amendment because the appellant was confined and restrained of his liberty after the adjudication of delinquency by being placed in the Gatesville State School and then being returned for trial in the Criminal District Court; whereas, if the appellant had not been sent to Gatesville, but had been given over to the custody of his parents, then he would not have been confined and restrained of his liberty and would not have been deprived of due process under the Fourteenth Amendment and the principles of fundamental fairness. He would still be in the position of pleading former jeopardy because of the two adjudications. I wonder if the majority would hold as they did if appellant had just been given over to the custody of his parents instead of being incarcerated at Gatesville. I think the majority opinion is bottomed on former jeopardy without saying it.

So long as this Court continues to engage in "legal fiction," then the cases of Wood v. State, Tex.Cr.App., 349 S.W.2d 605; Martinez v. State, Tex.Cr.App., 350 S.W.2d 929; Perry v. State, Tex.Cr.App., 350 S.W. 2d 21; and Hultin v. State, Tex.Cr.App., 351 S.W.2d 248, should be allowed to stand and should not be overruled.

Since the majority opinion effectively does away with the statutory definition that

Juvenile Courts and juvenile proceedings are civil actions, and by their opinion make criminal courts out of Juvenile Courts, then it necessarily follows that if this Court is going to apply the rules of criminal procedure to juvenile cases, Judge Morrison's dissenting opinion in Martinez, supra, correctly enunciates the law. It is clear to me that Martinez would not have been tried in a District Court or a Criminal District Court for the offense of murder after he had been previously tried for the offense of assault with intent to rob.

The opinion of the majority could well lead to pleas of former jeopardy being effectively urged by persons previously adjudicated insane. These persons, when brought to trial for the offense of murder, after a restoration of their sanity, could contend that they had been confined and restrained of their liberty after an adjudication determining them insane.

I express the further view that jeopardy can no more attach in a preliminary hearing in a District Court to try the sole issue of sanity or insanity of a defendant under indictment for the offense of murder than it can attach in a case *like the one before us.* Simply because the Juvenile Court had jurisdiction of the person of the juvenile does not give it jurisdiction of the *offense of murder,* a felony, any more than a District Court trying the sanity issue at the preliminary hearing has jurisdiction at that particular time of the *offense of murder.* The adjudication in the Juvenile Court is for one purpose, and one purpose only, and that purpose is to *determine the status of the juvenile;* namely, *is he a delinquent child.* The question of his guilt or innocence of the offense of murder is not before the Juvenile Court any more than the *offense of* murder is before the District Court in the preliminary hearing on the sole issue of sanity. I cannot make a distinction in these two parallel situations.

For the reasons stated herein and those previously stated in my dissenting opinion on original submission, I respectfully dissent.