Fredrick Joseph HENLEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 37034.

Court of Criminal Appeals of Texas.

Dec. 2, 1964.

On Rehearing Jan. 27, 1965.

Second Motion for Rehearing Denied and Dissenting Opinion Filed March 17, 1965.

Baldwin & Goodwin, by Joe B. Goodwin, Johns, Willard & Hannah, Beaumont, for appellant.

W. C. Lindsey, Dist. Atty., John R. De-Witt, Asst. Dist. Atty., Beaumont, and

**878**

Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Judge.

Our prior opinions are withdrawn and the following is substituted.

The conviction is for the unlawful sale of a narcotic drug; the punishment, five years in the penitentiary.

The indictment charged that on or about the 12th day of September, 1962, the appellant " * * * did * * * unlawfully sell to Mary Trahan, a narcotic drug, to-wit: Paregoric, in an unlawful amount."

By motion to quash and exception to the indictment, appellant alleged that the indictment failed to charge an offense because (1) paregoric was not included within the definition of a narcotic drug as defined in Section 1, subdivision (14) of Art. 725b, Vernon's Ann.P.C., and (2) the term "unlawful amount" used in the indictment was vague and indefinite and did not give him proper notice so that he could adequately prepare his defense.

Art. 725b, supra, provides in Section 1, subdivision (14), that " 'Narcotic drugs' " means, among other things, "opium," and in subdivision (12), that " 'Opium' " includes "morphine * * * and any compound, manufacture, salt, derivative, mixture, or preparation of opium * * *."

While paregoric is not included within the statutory definition of a narcotic drug, the proof shows that it is, in fact, a narcotic drug known under the official drug name of "camphorated tincture of opium" and that it contains morphine, which comes from opium, a narcotic drug enumerated in the statute.

■ Recently, in Taylor v. State, 172 Tex.Cr.R. 461, 358 S.W.2d 124, we upheld, as against a similar attack, an indictment alleging the unlawful possession of "a narcotic drug, to-wit: dolophine," where the proof showed that dolophine, although not enumerated in the act, was a narcotic drug, registered under such trade name and of the same chemical substance and formula as "amidone," which is named in the statute. Under the Taylor case, we hold the indictment in the instant case sufficient to charge an offense.

■ The use of the term "unlawful amount" in the indictment can be treated as surplusage.

■ Prior to the 1963 amendment of Art. 725b, supra, it was provided in Section 9 of the statute " * * * that any person may purchase at any time one (1) ounce of paregoric without a doctor's prescription." Such provision constituted an exception to the act, which, under the provision of Sec. 21, the state was not required to negative in the indictment. Torres v. State, 161 Tex.Cr.R. 480, 278 S.W.2d 853; Bridges v. State, 166 Tex.Cr.R. 556, 316 S.W.2d 757.

The state's evidence shows that the appellant was a duly licensed pharmacist and operated a small pharmacy in the city of Port Arthur. On the day in question, he was under investigation and surveillance of certain officers in connection with the sales and delivery of paregoric. At the instance of the officers, one Mary Trahan, a narcotic addict, called appellant on the telephone and told him she wanted to get a sixteen-ounce bottle of paregoric. Appellant replied: "All right," and told her to go to the home of Alene Joseph and bring seventeen dollars. Mrs. Trahan was then equipped with a small radio transmitter under her clothing and given seventeen dollars in bills. The serial numbers on the bills were noted by the officers and the bills were treated with a chemical. Mrs. Trahan proceeded, alone, to the home of Alene Joseph. At the same time, Officers Mitchell, Clayton and Gilbert drove to the vicinity of the Joseph home in a panel truck and parked about a block away from the house. In a short time appellant came to the house and, some five minutes later, Mary Trahan

arrived upon the scene. When she entered the house appellant was leaving. Alene Joseph was inside and she asked appellant about the paregoric. Appellant inquired if she had the seventeen dollars and after she gave him the money he stated that " 'Alene has got the bottle.' " He then told Alene to give Mrs. Trahan the bottle. Appellant left and returned to his place of business. Alene said: " 'Here comes the law,' " and then put the package in a drawer in her room. Thereupon, the three officers who were in the panel truck and had overheard the conversation between appellant and Mrs. Trahan by radio, entered and proceeded to search the house, under the authority of a search warrant.

In the search, a package containing a bottle was found by the officers in the dresser drawer in a bedroom.

It was shown by the testimony of Chemist Rolland E. Tullis, of the Department of Public Safety, that the bottle contained slightly over sixteen ounces of paregoric. Chemist Tullis testified that the official name of paregoric is "camphorated tincture of opium" and that paregoric is a narcotic drug in that it contains opium.

It was further shown that, following his arrest, appellant did have a trace of the chemical substance on his thumb, but none of the money delivered to him by Mrs. Trahan was found in his possession.

Testifying as a witness in his own behalf, appellant admitted going to the home of Alene Joseph on the day in question, but swore he only took with him a bundle of clothes to be laundered and nothing else. In this he was corroborated by the witness Alene Joseph, as will be shown later.

The jury by their verdict resolved the conflict in the testimony against appellant, and we find the evidence sufficient to support the conviction.

In addition to his attack upon the indictment, appellant urges three other grounds for reversal of the conviction.

By both formal and informal bills of exception, appellant insists that the court erred in refusing to require the state to deliver to him a certain police offense report, made in connection with his arrest, to be used in cross-examination of two of the state's witnesses, Officers Mitchell and Hunter.

The record reflects that the report was actually made by Officer Phillips in collaboration with Officers Mitchell and Hunter. Officers Mitchell and Hunter both stated that before testifying in the case they had read the report for the purpose of refreshing their memory, but the same was not exhibited before the jury or referred to by either witness in the jury's presence.

The police report is before us for inspection, as part of the record on appeal.

█ While under the rule announced in Gaskin v. State, 172 Tex.Cr.R. 7, 353 S.W. 2d 467, and Pruitt v. State, 172 Tex.Cr.R. 187, 355 S.W.2d 528, it appears that the appellant should have been furnished the report for the purpose of cross-examination of the witnesses, an examination of the report leads us to the conclusion that he was not injured thereby. The offense report does not vary materially from the two officers' testimony given at the trial. Under such a record the court's action does not present reversible error. Sewell v. State, Tex.Cr.App., 367 S.W.2d 349.

Appellant also contends that the court erred in permitting the state to impeach its witness Alene Joseph.

The record reflects that on her direct examination the witness Joseph testified that while appellant did come to her home on the morning in question and brought some clothes to be laundered, he did not bring her a package for Mary Trahan. State's counsel then proceeded to question her with reference to a written statement which she had made to the police. The witness admitted that she signed a statement but denied that she made statements therein which were contradictory to

her testimony. The written statement referred to during her examination was not introduced in evidence nor was proof made of its contents. In the absence of such proof, the witness was not contradicted and no question of her impeachment is presented. Lopez v. State, 171 Tex.Cr.R. 552, 352 S.W.2d 106.

■ Appellant's last contention is that the search warrant was not produced by the State and exhibited to the Court as a valid search warrant. We agree with appellant's contention that he would have had standing to urge this complaint, under the authority of Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, *had he been on the premises at the time of the search*. However, the record in this case clearly shows that *appellant was not present* on Alene Joseph's premises at the time the search was made (not even as an invitee) but was in fact back at his own place of business at such time. Under the record and the law he had no standing to complain of the search of Alene Joseph's house or of the recovery of the evidence resulting from such search.

Finding no reversible error, the judgment is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING

MORRISON, Judge.

In our prior opinion we held that the witness Alene Joseph had not been impeached and cited as authority Lopez v. State, 171 Tex.Cr.R. 552, 352 S.W.2d 106. Upon further examination of Lopez we find the rule there expressed as follows: "To constitute impeachment of which the appellant complains, it would be necessary for the State to support the predicate laid, either by the introduction of the written statement *or by an affirmative showing that the written statement contained such matter*." We now re-examine the record before us in the light of this rule. When the witness Joseph, while being examined by the State, first denied that appellant had brought a package to her house (a fact which was necessary for the State to prove in order to make its case) she was asked if she had given "this statement." To this she replied, "No sir, I didn't, but I signed my name." She then testified that after signing the statement she had refused to talk to the prosecutor. After a hearing in the absence of the jury, the court expressed the opinion that the State had established that they were surprised at her answer in which she denied that appellant had brought a package to her home. The following then transpired in the presence of the jury:

"Q. Do you know Max Phillips or Sergeant Phillips, a police officer for the Port Arthur police?

"A. Yes, sir.

"Q. On September 13, 1962 he was questioning you concerning this matter and you gave him certain answers?

"A. Yes, sir.

"Q. Isn't it a fact that you told him 'My name is Alene Joseph.'?

"A. Yes, sir.

"Q. Isn't it a fact that you told him, 'I am thirty-six years old and I live at 6032 Buckner Drive, Port Acres, Texas and I am a housewife.'? Isn't it a fact that you told him that?

"A. No, I didn't tell him I was thirty-six; I am thirty-eight years old.

"Q. This was in September of 1962.

"A. Yes, uh-huh.

"Q. That's a fact you told him that?

"A. Uh-huh.

"Q. Isn't it a fact that you said, 'Yesterday morning, September 12 at about 10:20 Doc Hen*ely* came to my house at 6032 Buckner Drive, he brought some clothes in to be

washed.'? isn't it a fact that you told him that?

"A. Yes, sir.

"Q. Isn't it a fact that you told him the following: 'After he brought the clothes he gave me a package and told me if Mary Trahan came by to pick me up to go do some work for her today to give her this package.'?

"A. No, sir.

"Q. That is not a fact. You did not tell him that?

"A. No, sir.

"Q. Isn't it a fact that you told him this: 'I was shown a package by Detective Mitchell and Sergeant Phillips, it is the same package that Doc gave me to give to Mrs. Trahan.'?

"A. No.

"Q. That is not true?

"A. No, sir.

"Q. Isn't it a fact that you told him the following: 'After Doc Henley gave me the package he told me to go put it up.' Isn't that a fact?

"A. No.

"Q. Isn't it a fact that you told him, 'I put the package in the back bedroom in a dresser drawer.'?

"A. No, sir.

"Q. Isn't it a fact that you told him, 'When Mary Trahan came in the house she asked me was I going to help her today. I told her I would not, the weather was too bad. I told her I had a package that Doc Henley had told me to give her.'? Isn't it a fact you told him that?

"A. No. I told them when they asked me—I told them she had come to get me to go work for her.

"Q. Isn't it a fact that you told him the following: 'I had not had time to give Mrs. Trahan the package yet when the police came into my house. The police found the package where I had put it in the dresser drawer.'?

"A. No, sir."

It is now apparent from the above that this constituted "an affirmative showing that the written statement contained such matter," and the witness was actually impeached.

This brings us to the question of the Court's charge which we have not heretofore discussed. In appellant's objections to the charge we find the following two paragraphs:

"In addition the defendant objects to said instruction because it is not complete and requests the Court to further instruct the jury that they are not to consider any prior statement made by the witness, Alene Joseph, as any proof that said testimony was not true, or a proper instruction embracing this last principle of law."

"* * *

"The defendant objects to the court's charge because same fails to withdraw from the evidence the questions and answers concerning a prior statement made by the State's witness Alene Joseph, and here and now requests the court to give a proper instruction withdrawing from the evidence all attempted impeachment of the said witness by the State."

The court failed to respond to either objection. In Hall v. State, 164 Tex.Cr.R. 142, 297 S.W.2d 685, we had occasion to discuss fully the law relating to the court's charge in cases where a State's witness

has been impeached. There we quoted with approval a charge which was given in Carroll v. State, 143 Tex.Cr.R. 269, 158 S.W.2d 532, as follows:

"You are further instructed that the testimony of the witness, E. D. Cartwright, regarding the statements of the witnesses Frank Carroll and Mrs. Frank Carroll, was admitted for the purpose of impeaching the said witnesses, Frank Carroll and Mrs. Frank Carroll, if you find that it does impeach them, and you cannot consider said impeachment testimony as any evidence whatever of the guilt of the defendant."

█ We have now concluded that appellant's objections clearly pointed out to the court the defect in his charge and that he fell into error in not responding to such objections.

Having so concluded, appellant's motion for rehearing is granted, the judgment of affirmance is set aside and the judgment is now reversed and remanded.

It is so ordered.

WOODLEY, Judge (dissenting).

Alene Joseph, called as a witness for the state, testified to affirmative facts injurious to the state. She testified that appellant did not bring her a package and that she had never seen the bottle the officers said they found in her house. The state pleaded surprise and was properly permitted to impeach her.

The *questions* and answers set out in the majority opinion are erroneously construed as "an affirmative showing that the written statement contained such matter," and constituted impeachment, though the witness *denied*:

(1) that she told the police officer that appellant gave her a package;

(2) told her to give it to Mrs. Trahan;

(3) that she was shown a package which was the package that appellant told her to give to Mrs. Trahan;

(4) that she put the package appellant gave her in a dresser drawer;

(5) that she told Mrs. Trahan she had a package that appellant told her to give her, and

(6) *denied* that she made the statement: "I had not had time to give Mrs. Trahan the package yet when the police came into my house. The police found the package where I had put it in the dresser drawer."

Predicate was thus laid for the impeachment of the witness by proof that she in fact had made the statement she had denied making to Officer Phillips, but neither the witness sought to be impeached nor any other witness testified that she made any of the statements, and no statement in writing was introduced.

As I see it, the majority opinion confuses the question of error in the state's attempted impeachment of its own witness who has merely failed to give the testimony expected, and the attempted impeachment of such a witness who, contrary to his previous statement and to the surprise of the state, testifies to facts injurious to the state.

The majority errs in holding that the trial court should have instructed the jury as though the witness had been impeached. Certainly an instruction such as quoted from Carroll v. State would not be proper.

Suppose the court had instructed the jury that certain evidence had been admitted for the purpose of impeaching the witness Alene Joseph. To *whose* testimony and to *what* evidence would the court have directed the jury's attention? To hers? And how could the jury have found that the questions answered by her in the negative impeached Alene Joseph? What "impeachment testi-

mony" could the jury properly have been instructed not to consider as evidence of the guilt of the defendant? Her testimony?

## ON STATE'S SECOND MOTION FOR REHEARING

Rehearing denied.

WOODLEY, Judge (dissenting).

The majority overrule the state's second motion for rehearing without written opinion.

In doing so they cast aside the following authorities which sustain Judge McDonald's disposition of the question of whether the state's witness Alene Joseph was impeached, in his opinion affirming this conviction.

From Lopez v. State, 171 Tex.Cr.R. 552, 352 S.W.2d 106:

"While testifying for the State, Marcella Lopez (the mother of appellant) admitted that she signed a statement by making a mark in the presence of her son, Domacio Lopez, and his wife, in which she stated that shortly after Christmas, in 1958, she found some money in the roof of an outside toilet after she had seen the appellant go to the outside toilet, but she denied saying that she saw him take anything from his pocket and hide it on the roof of the toilet. She further denied saying that 'After I found the money, I began to wonder if maybe Andres (appellant) had killed Miguel Ramos.' The statement referred to during the examination of Marcella Lopez was never introduced in evidence.

"(2) To constitute the impeachment of which the appellant complains, it would be necessary for the State to support the predicate laid, either by the introduction of the written statement or by an affirmative showing that the written statement contained such matter. In the absence of such proof, her denial

of making such statement was not contradicted. Therefore, the matter of her impeachment is not presented. Bailey v. State, 37 Tex.Cr.R. 579, 40 S.W. 281; Robbins v. State, 162 Tex.Cr.R. 107, 282 S.W.2d 711."

From 62 Tex.Jur.2d Sec. 307:

"* * * Where the contradictory statement is contained in a document it is not a sufficient predicate merely to ask if a certain writing had been signed by the witness; the document must be produced for inspection by counsel for the opposite party, and for identification by the witness *whose attention must be called to the statements therein that are relied on by the cross-examiner as being in conflict with the testimony.*"

From McCormick and Ray, Texas Evidence, Second Edition, Section 687:

" * * * In the contradiction already considered the statements of other witnesses were relied on to show the error. Here the witness' own prior statement in which he gave a contrary version, is used. Since his previous statement and his present testimony are contradictory, one of them must be erroneous * * *. *Of course where the witness denies making the former statement other witnesses must be called as in the preceding method.*"

Section 692:

"One of the chief objections to the use of prior contradictory statements is that of unfair surprise. * * * To obviate this objection the rule was laid down more than a century ago that before a witness could be impeached by prior inconsistent statements a predicate must first be laid. This consists in asking the witness, on his cross-examination, whether he made the alleged contradictory statement. The witness is thus warned that the statement will later be used against him.

He. is given an opportunity to deny it and prepare to disprove it, or if he admits making it, to explain the statement. This rule is recognized in almost all jurisdictions. It was adopted by the Supreme Court of Texas at an early date and has been rigidly enforced since that time. *The Texas Courts have made no distinction between oral and written statements in this regard.*"

Section 695:

"Where the witness denies making the prior contradictory statement all the courts hold that the adverse party may prove that he did make such statement. And where he states that he 'does not remember' having made the statement or is not positive he made it, the predicate is complete and the impeachment may proceed."

I respectfully dissent.