Thurman Fred SLOAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 39819.

Court of Criminal Appeals of Texas.

Nov. 23, 1966.

Rehearing Denied Dec. 31, 1966.

Pat McDowell, of Maloney, Milner & McDowell, Dallas, for appellant.

Henry Wade, Dist. Atty., John Vance, Mike Everett and Kerry P. FitzGerald, Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

DICE, Commisioner.

Murder is the offense; the punishment, thirty-three years.

Trial was had and notice of appeal given prior to January 1, 1966.

The state's testimony shows that on the night in question appellant and the deceased first met at a drive-in in the city of Dallas. While at the drive-in they had a conversation about a girl, Linda Minyard, who was employed at the place. At about 12:15 a. m., the deceased left with Linda and another girl to go to a house where a party was in progress. As they were leaving, appellant told Linda not to go, and while enroute to the party the deceased said appellant had stated to him "that if he picked Linda up he was going to come up there and start some trouble." The deceased and the two girls arrived at the house at about 12:30 a. m. Some fifteen minutes later, appellant came to the house with two male companions. At such time, appellant was armed with a pistol and he proceeded to go in the house, leaving his two companions in the car. As he passed through the living room, where the deceased and Elaine Hicks were seated, appellant was heard to say that "he was going * * * to make that house into a church." In about five minutes, appellant went onto the porch, where, in a conversation with the witness Terry Sloan, he stated he was going to whip the deceased because he had told him "not to pick Linda up." About this time, the deceased came outside and went to the opposite end of the porch from where appellant was standing. In a short time appellant went to the deceased and the two

squatted down and began talking. In two or three minutes a fight started between them, and appellant, with a gun in his hand, swung at the deceased three or four times. During the encounter the gun fired and the deceased fell to the ground, fatally wounded, with a bullet wound in the chest.

After the shot was fired, one James Cook went to the turtle of his car parked nearby and appellant told him to "stay out of it or he would shoot him." Appellant then turned around, said he was going back into the house to whip Linda before he left, and told Terry Sloan to get out of his way or he would kill him, too. Appellant then left the premises, where deceased was lying on the ground, mortally wounded.

Testifying as a witness in his own behalf, appellant stated that the fight between him and the deceased started after he asked the deceased why he came to the drive-in and got Linda; that he first hit the deceased with his fists and when he (appellant) staggered backward the gun slipped out of his pocket and he proceeded to grab the gun and swing at the deceased with it, twice. Appellant swore that he never did hit the deceased with the gun and that he was not pointing it at him when it "went off accidentally." He also swore that he did not intend to shoot or kill the deceased and denied that after the shooting he cursed or pointed the gun at anyone. Appellant further stated that the reason he went to the house where the killing occurred was to talk to Linda and that one of his companions suggested that "we" take the gun because they all carried guns "out there."

The court in his charge submitted to the jury the issue of appellant's guilt of both murder with and without malice and also submitted appellant's defense of accident.

■ We first overrule appellant's contention that the evidence is insufficient to support a conviction for murder with malice. It was within the province of the jury to reject appellant's testimony that he did not intend to kill the deceased and that the

killing was accidental. Under the decisions of this court, proof of the intentional shooting of one with a gun is sufficient to authorize a jury to find that the shooting was actuated by malice. Beasley v. State, 171 Tex.Cr.R. 115, 346 S.W.2d 123; Bell v. State, Tex.Cr.App., 398 S.W.2d 133. Malice does not require any specific length of time for its germination or growth but may be formed immediately before the act is committed and can arise instantly. Johnson v. State, Tex.Cr.App., 401 S.W.2d 837.

The facts and circumstances proven were sufficient to support the jury's finding that the shooting was intentional and with malice.

■ We do not agree that because the state's witness Terry Sloan testified, on direct examination, that "The gun went off," the evidence showed an accidental killing. The witness did not testify that the shooting was accidental, which, among other reasons, distinguishes the case from Mancil v. State, Tex.Cr.App., 391 S.W.2d 731, cited by appellant. The mere statement of the witness that "The gun went off" does not, under all the facts and circumstances, show an accidental killing.

■ We find no error in the court's charge on accident. The court fully instructed the jury on the law of accident and unintentional killing. In connection with such instruction, the court, although not required, charged the jury that the fact that appellant was armed would not deprive him of the defense of accident. We do not agree that the latter instruction in any way restricted the rights of appellant under his defense of accident. To the contrary, the instruction was favorable to him. The court's instruction presented appellant's defense in an affirmative manner, untrammeled and without complication with any other issue in the case.

West v. State, 154 Tex.Cr.R. 502, 229 S.W.2d 623, cited by appellant, is not here controlling, because in that case the court's instruction on accident was encumbered with

certain phases of the law of self-defense and did restrict the right of the accused under his defense of accident.

■ Nor do we perceive error in the court's refusal to give appellant's requested instruction on the right to arm himself and seek out the deceased for the purpose of asking an explanation as to the reason he had taken Linda Fay Minyard to the place where the killing occurred.

There was no issue of self-defense in the case and an instruction on the right to arm and seek out the deceased for an explanation was not called for. Sanders v. State, Tex.Cr.App., 83 S.W. 712. In Porter v. State, Tex.Cr.App., 215 S.W.2d 889, cited by appellant, there was an issue of self-defense and for that reason the case is not controlling.

Appellant complains that the court erred in permitting the state to improperly impeach two of its own witnesses: Terry Van Sloan and Linda Fay Minyard.

It is first insisted that the state was permitted to improperly impeach the witness Sloan by referring to an affidavit he had given to the police in which he stated that, after the shooting, appellant cursed and threatened to kill James Cook as the boy was going to the turtle of his car.

■ The record reflects that the court first sustained appellant's objection to the inquiry on the ground that a proper predicate had not been laid and that later in the witness's testimony he was again asked about the affidavit and testified, without objection, to certain statements therein. The affidavit was never offered in evidence. No error is presented.

Later in the witness's testimony on redirect examination, after he had testified that appellant swung at the deceased about four times, over appellant's objection of improper impeachment he was permitted to testify that in his affidavit made after the shooting he stated that appellant *hit* the deceased about four times and then shot him.

■ While the impeachment was not authorized under Art. 732, Vernon's Ann. C.C.P., in effect at the time of trial, because the witness had not testified to facts injurious to the state's case we perceive no error. Whether appellant swung at the deceased four times or hit him four times before shooting him was not decisive of any ultimate issue in the case.

■ Appellant's claim that the state was permitted to improperly impeach the witness Linda Fay Minyard is not supported by the record. While the witness testified in answer to questioning by state's counsel that she had made a certain affidavit after the shooting, neither the affidavit nor its contents were introduced in evidence so as to contradict her testimony. Under such record, there was no impeachment. Lopez v. State, 171 Tex.Cr.R. 552, 352 S.W.2d 106.

■ We have examined appellant's informal bills of exception to the jury argument of state's counsel and find no reversible error. The assertion by state's counsel, in his argument, that "an affidavit is under oath" was a reasonable deduction from the evidence. An affidavit was referred to in the testimony. We are aware of no affidavit that is not under oath. While such argument was proper, the careful trial judge instructed the jury to disregard counsel's reference to an oath.

■ The reference by state's counsel to certain people sitting in the courtroom behind appellant as being members of his family does not present reversible error, especially in view of the court's instruction to the jury to disregard such reference.

The judgment is affirmed.

Opinion approved by the Court.