ACCEPTED
01-14-00744-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/4/2015 10:38:02 AM
CHRISTOPHER PRINE
CLERK

# Nos. 1-14-00744-CR and 1-14-00745-CR

In the
Court of Appeals
For the
First District of Texas
At Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

3/4/2015 10:38:02 AM

CHRISTOPHER A. PRINE
Clerk

————————◆————————

## Nos. 1326112 and 1383738

In the 248th District Court
Of Harris County, Texas

————————◆————————

# ARTAVIOUS DEON HOLLINS,

*Appellant*

V.

# THE STATE OF TEXAS

*Appellee*

————————◆————————

## STATE'S APPELLATE BRIEF

————————◆————————

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**KIMBERLY APERAUCH STELTER**
Assistant District Attorney
Harris County, Texas
TBC No. 19141400
stelter_kimberly@dao.hctx.net

**JOHN WAKEFIELD**
Assistant District Attorney
Harris County, Texas

1201 Franklin, Suite 600
Houston, Texas 77002
Tel: (713) 755-5826
FAX: (713) 755-5809

*Counsel for Appellee*

ORAL ARGUMENT REQUESTED ONLY IF GRANTED TO APPELLANT

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 39, the State requests oral argument only if oral argument is granted to the appellant.

## IDENTIFICATION OF THE PARTIES

Counsel for the State:

**Devon Anderson** — District Attorney of Harris County

**Kimberly Aperauch Stelter** — Assistant District Attorney on appeal

**John Wakefield** — Assistant District Attorney at trial

Appellant or criminal defendant:

**Artavious Deon Hollins**

Counsel for Appellant:

**Todd Dupont, II** — Counsel on appeal

**Casey Garrett** — Counsel at trial

Trial Judge:

**Katherine Cabaniss** — Presiding Judge

i

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF CONTENTS................................................................. ii

INDEX OF AUTHORITIES.......................................................... iii

STATEMENT OF THE CASE.........................................................1

STATEMENT OF FACTS ................................................................2

SUMMARY OF THE ARGUMENT ...........................................................6

REPLY TO  APPELLANT'S FIRST POINT OF ERROR......................................7

REPLY TO  APPELLANT'S SECOND POINT OF ERROR.............................15

CONCLUSION ...................................................................21

CERTIFICATE OF SERVICE AND COMPLIANCE ...........................................21

# INDEX OF AUTHORITIES

**CASES**

*Brooks v. State*,
323 S.W.3d 893 (Tex. Crim. App. 2010)..........................................................15

*Brown v. State,*
122 S.W.3d 794 (Tex. Crim. App. 2003)..........................................................16

*Cantu v. State,*
395 S.W.3d 202 (Tex.App—
Houston [1st Dist.] 2012, pet. ref'd)..................................................................19

*Chambers v. State*,
805 S.W.2d 459 (Tex. Crim. App. 1991)..........................................................15

*Coble v. State,*
330 S.W.3d 253 (Tex. Crim. App. 2010)..........................................................11

*Cook v. State,*
858 S.W.2d 467 (Tex. Crim. App. 1993)..........................................................10

*Couchman v. State*
3 S.W.3d 155 (Tex.App.—
Fort Worth 1999, pet. ref'd..............................................................................19

*Curiel v. State,*
243 S.W.3d 10 (Tex. App.—
Houston [1st Dist.] 2007, pet. ref'd)................................................................10

*Finney v. State,*
No. 2-02-034-CR, 2003 WL 151972, at 1 (Tex.App.—
Fort Worth Jan.23, 2003, pet. ref'd)
(mem.op.) (not designated for publication) ......................................................12

*Godsey v. State,*
719 S.W.2d 578 (Tex. Crim. App. 1986)...................................................... 16, 19

*Gosch v. State,*
829 S.W.2d 775 (Tex. Crim. App. 1991)..........................................................18

*Guevara v. State,*
152 S.W.3d 45 (Tex. Crim. App. 2004)............................................................18

*Holmes v. State*,
   135 S.W.3d 178 (Tex. App.—
   Waco,2004, no pet.) ..................................................................................12

*Jackson v. Virginia*,
   443 U.S. 307319 (1979) .......................................................................... 15, 20

*Johnson v. State*,
   871 S.W.2d 183 (Tex. Crim. App. 1993)..................................................16

*Johnson v. State,*
   967 S.W.2d 410 (Tex. Crim. App. 1998)..................................................13

*King v. State*,
   29 S.W.3d 556 (Tex. Crim. App. 2000)....................................................15

*King v. State,*
   953 S.W.2d 266 (Tex. Crim. App. 1997)..................................................13

*Lankston v. State,*
   827 S.W.2d 907 (Tex. Crim. App. 1992)..................................................10

*Lovill v. State*,
   319 S.W.3d 687 (Tex. Crim. App. 2009)..................................................10

*Lugo-Lugo v. State,*
   650 S.W.2d 72 (Tex. Crim. App. 1983)....................................................17

*Medina v. State,*
   7 S.W.3d 633, (Tex. Crim. App. 1999)....................................................16

*Motilla v. State,*
   78 S.W.3d 352 (Tex. Crim. App. 2002)....................................................13

*Osbourn v. State*,
   92 S.W.3d 531 (Tex. Crim. App. 2002)....................................................11

*Patrick v. State,*
   906 S.W.2d 481(Tex. Crim. App. 1995)...................................................16

*Pena v. State*,
   441 S.W.3d 635 (Tex. App.—
   Houston [1 Dist.] 2014, pet. ref'd).........................................................19

*Penry v. State,*
   903 S.W.2d 715 (Tex. Crim. App. 1995)..................................................12

*Purtell v. State,*
   761 S.W.2d 360 (Tex. Crim. App. 1988)..................................................10

*Ramirez v. State,*
  229 S.W.3d 725 (Tex.App.-
  San Antonio 2007, no pet.)..................................................................16

*Rodriguez v. State,*
  90 S.W.3d 340 (Tex. App.—
  El Paso 2001, pet. ref'd) .....................................................................16

*Rogers. v. State,*
  205 S.W.3rd 525 (Tex. Crim. App. 2006) ...........................................11

*Sloan v. State,*
  409 S.W.2d 412 (Tex. Crim. App. 1966).............................................20

*Winningham v. State,*
  334 S.W.3d 309 (Tex.App. –
  Fort Worth,2010, pet. ref'd) ................................................................19

*Wyatt v. State,*
  23 S.W.3d 18 (Tex. Crim. App. 2000)..................................................12

**STATUTES**

TEX. PENAL CODE § 38.04 (West 2010)......................................................15

TEX. PENAL CODE ANN. §  19.02(b)(2) (West 2011) ...............................16

**RULES**

TEX .R. APP. P. 44.2(b)................................................................................13

TEX. R. APP. P. 33.1(a)(1)(A)......................................................................10

TEX. R. APP. P. 39....................................................................................... i

TEX. R. EVID. 602 ..................................................................................10

TEX. R. EVID. 702 ..................................................................................11

**TO THE HONORABLE COURT OF APPEALS:**

**STATEMENT OF THE CASE**

The appellant was charged with murder and tampering with evidence (CR1–5, CR2-5).[1] He pled "not guilty" to the charges, and the cases were tried to a jury (CR1 –308, CR2-66). The jury found him guilty of murder and assessed his punishment at life in the Institutional Division of the Texas Department of Criminal Justice (CR1-308). The jury also found appellant guilty of tampering with the evidence  and assessed his punishment in that case at twenty-five years in the Institutional Division of the Texas Department of Criminal Justice, to run concurrently with appellant's murder conviction (CR2-66). The trial court certified appellant's right to appeal, and appellant filed notice of appeal for both convictions that same day (CR1-311-312, CR2-69-70).

---

[1] Appellant was charged with murder in cause no.1326112 and tampering with evidence in cause no. 1383738.  These cases were tried together, both resulted in convictions, and both were appealed (1-14-00744-CR being the murder case and 1-14-00745-CR being the tampering with the evidence case). The cases share a common reporter's record but have different clerk's records, which will be referred to as CR1 and CR2 respectively. While appellant has included both cause numbers on his brief, it appears that the issues raised concern only the murder conviction, not the tampering with the evidence conviction. Thus, the appeal in No. 1-14-00745-CR should be dismissed for want of prosecution.

## STATEMENT OF FACTS

Appellant and his girlfriend had only lived at the Casa Nube apartments a few weeks when appellant got into an argument with two neighbors, Shae and her friend, Tranea Jones (RR. III-137, 25, IV-265). Appellant called the two "bitches," and told them he was going to "kick their ass." (RR. IV-26). Jones' boyfriend Andre Lewis intervened and offered to fight appellant, but appellant said he wanted to fight the women instead (RR. IV-26). Appellant then said he was going to call his "people" or his "boys." (RR. IV-27-28). Thirty to forty minutes later some cars showed up and started circling the apartment, but nobody got out of the vehicles (RR. IV-28). In response, Lewis went to a nearby apartment where he kept his "protection," a .40 Glock pistol (RR. IV-29). Lewis put the gun in his back pocket so that appellant could see it, then told appellant to "go in your house, smoke a sweet, calm down, leave these women alone. Tomorrow be a new day." (RR. IV-31).

Appellant did return to his apartment, and Lewis to his, but Shae was not satisfied (RR. IV-32). After the argument Shae called "D" her "baby daddy," and together the two of them went over to appellant's apartment (RR. III-141, IV-34). They tried to get appellant to come out of his apartment by taunting him, kicking his door, and throwing things through his windows, but appellant stayed inside, and after 20 to 30 minutes the two left (RR. III-142, 143,145, 148, 206).

Tranea Jones was in her apartment above appellant and heard the commotion, including D kicking appellant's door (RR. III-146). Later she testified that there was a footprint on appellant's door left from the incident (RR. III-147).

A week later Derrick Williams was visiting Shae outside her apartment when Shae brought up the argument with appellant (RR. III-154, 197).[2] Williams and appellant then began to argue and shout at each other (RR. III-149, 151, 155). The arguing between appellant and Williams went on for much of the afternoon, until finally Williams came downstairs to the courtyard of the apartment complex (RR. III-153, 156, 157). Jones and Lewis also heard the argument (RR. III-157). Lewis put on his shoes and headed downstairs to try and calm Williams down (RR. 156, 157 IV-45).

Williams and apellant continued to exchange words (RR. IV-46). Appellant hovered around the door of his apartment, inside his gate (RR. IV-47). Finally, appellant opened his gate and told Williams to "come on in." (RR. III-156, 159-160, 215). At the time appellant's gate to his patio was open, as well as his front door (RR. III-156). As soon as Williams crossed the threshold of appellant's apartment, appellant pulled out a gun from behind his back (RR. III-164, IV-53). Appellant cocked the gun and said "you in my house." (RR. III-164, IV-53).

---

[2] Derrick also went by the nickname "D," but all parties agreed he was not the same "D" who was involved in the incident with appellant the week before (RR. III-140, 199, 200, IV-209).

3

Appellant then ran toward Williams and tried to hit him in the face with the pistol (RR. IV-53, 54). Williams grabbed appellant's arm, there was a struggle, and the gun went off (RR. IV-54, 125). Williams stepped outside the apartment, said "It didn't have to go like this," and collapsed (RR. III-167, 168). Jones tried to help Williams by determining where he had been shot, trying to stop the bleeding, and performing CPR, but her attempts were futile, and Williams died at the scene (RR. III-37, 168-169). The autopsy showed that the bullet entered high up under Williams' left armpit and exited lower in the front of his chest, after having passed through his left lung and heart (RR. IV-17, 173, 180).

Immediately after the shooting appellant grabbed his keys, locked his door, and ran out of the apartment complex through the gate by the apartment office (RR. III-167, 169-170, IV-55, 248-249). Once away from the scene appellant discarded the white shirt and black cap he had been wearing and left them on the ground by a nearby warehouse (RR. III, 50, State's Exhibit No.7, 8).[3] He also hid the gun used in the shooting, which was found under a Ligustrum bush approximately 30 feet away from the shirt and cap (RR. III-70, State's Exhibit No. 13). While the shirt and cap were found in plain view, it took a trained police canine unit to locate the weapon (RR. III-54, 69).

---

[3] Dispatch had given out a description of the suspect as a black male wearing a white shirt and a black ball cap (RR. III-254).

After disposing of the shirt, cap, and gun, appellant entered a nearby secondhand clothing store (RR. IV-133, 135, IV-252). There he purchased a new shirt, along with shorts and shoes (RR. IV-140, IV-253). He looked at a cap as well, but ended up not buying it (RR. IV-140). Appellant changed into the new outfit and left his old clothing in the dressing room (RR. IV-142, 144).

Appellant then offered to pay anyone $10 to give him a ride to the parking lot of a nearby Denny's (RR. IV-141). Rafael Narvaez, the father of the owner of the store, took him up on the offer (RR. IV-141). On the five minute ride to the parking lot appellant offered to buy Narvaez' cap, but Narvaez told him it was not for sale (RR. IV-143-144).

Once appellant was dropped off he met his girlfriend, who had just finished getting her nails done at a nearby salon (RR. IV-254). Together they decided not to go back to the apartment complex but to Dallas, where they stayed with appellant's aunt (RR. IV-256).

The police were able to get a warrant for appellant's arrest the day after the shooting (RR. III-271). Appellant was arrested in the Dallas/Arlington area a little over a month after the offense, after being detained on an unrelated traffic stop (RR. III-271, 257).

At trial, appellant testified that he never invited Williams or Lewis into his home (RR. IV-260). Instead, appellant claimed that his front door was closed, he

5

was in the bathroom, and when he came out Williams and Lewis were in his apartment (RR. IV-239). Appellant didn't hear them enter, but assumed the flushing of the toilet covered the sound of them kicking in the door (RR. IV-239). According to appellant, Lewis and Williams both had guns, while appellant was unarmed (RR. IV-241). Williams pulled out his gun and tried to hit appellant with it (R. IV-241). Appellant then claimed that he grabbed the gun, pulled it away, and the gun went off (RR. IV-241, 247). Williams and Lewis exited the apartment, and Williams fell while Lewis took off running (RR. IV-248). After that, appellant panicked and left the scene of the crime (RR. IV-249).

## SUMMARY OF THE ARGUMENT

Appellant raised no point error relating to his conviction for tampering with the evidence, therefore his appeal on No. 1-14-00744-CR should be dismissed for want of prosecution. The trial court did not err in allowing Officer Holmes to testify about the freshness of the footprint on appellant's door when appellant failed to make a specific objection and his objection failed to match his objection on appeal. Furthermore, Officer Holmes' testimony was admissible under TEX. R. EVID. 702 as the opinion of an expert witness due to his training as a Crime Scene Unit Investigator. Even if the trial court had erred in allowing Officer Holmes to

6

answer the one question about the footprint on appellant's door, there would not be reversible error as introduction of this evidence did not affect a substantial right and would not have influenced the decision of the jury. Similarly, the evidence in this case was sufficient for the jury to find that appellant committed murder under either TEX. PENAL CODE ANN. §19.02(b)(1) or TEX. PENAL CODE ANN. §19.02(b)(2.).

## REPLY TO APPELLANT'S FIRST POINT OF ERROR

**The trial court did not err in allowing Officer Holmes to testify about the condition of the shoeprint found on appellant's door, as appellant failed to make a specific objection, and Officer Holmes' testimony was admissible under TEX. R. EVID. 702. Even if the testimony had been inadmissible, its introduction was not reversible error.**

Appellant argues in his first point of error that the trial court abused her discretion in allowing Officer Holmes to testify as to whether the footprint on appellant's door was old or not. Tranea Jones' testimony was that the footprint was made by D a week earlier, when D and Shae were trying to get appellant to come out and fight (RR. III-145-147). It fit appellant's theory of the case that the footprint was made at the time of the shooting, when appellant claimed Lewis and Williams forced their way into his apartment by kicking open the door (RR. IV-239, 325-326).

7

Officer Holmes was the crime scene investigator. As such, his duty was to take photos, measurements, and gather evidence at the scene of the murder (RR. II-79). Holmes had taken several pictures of appellant's door, which were introduced into evidence (State's Exhibit No. 17, 18, 19). Holmes then testified extensively about the condition of the door, specifically that it was not cracked, damaged, or looked in any way like it had been kicked in (RR. III-86). The door lock and dead bolt both appeared to be functioning (RR. III-87). The State then asked about the weather on the day of the shooting (RR. III-87). Holmes testified that it was cool and dry that day, there had not been any rain, and that there was no wetness on the ground or mud nearby (RR. III-88). The State next focused the officer's attention on the footprint on appellant's door in the following colloquy:

Q: Was this particular thing– you spent a lot of time taking photographs of this particular print?

A: Correct.

Q: Was that mud, that dirt there, was it dry or was it wet?

A: It was dry.

Q: Had that mud footprint been there for a while?

[Defense Counsel] Objection, calls for speculation.

THE COURT: Sustained.

Q: Based on your expertise as a CSU officer who has made scene of these kinds and investigated scenes of all kinds of crimes, in your

8

knowledge if you have it based on training and experience did you determine that this was old or not?

[Defense Counsel]: Objection as to that print that day.

THE COURT: Overruled.

A: It had been there long enough to dry, which typically means number of hours if not days.

Q: When you were at the scene, it was less than 30 minutes after the call for the shooting death had been dropped, right?

A: I got there at 5:15.

Q: Okay. About an hour?

A: Not quite two hours.

Q: Not quite two hours, be an hour and 15 minutes?

A: Correct.

Q: At any time though the investigation of anyone else there, had that been noticed as a wet footprint?

A: No.

Q: Was there mud nearby this scene at all?

A: No.

(RR. III-88-89).

### 1. **Appellant did not preserve error by making a proper objection.**

Appellant claims that the court erred in overruling his objection that Officer Holmes' testimony about the footprint being old was "speculation." (appellant's

9

brief, p. 10). However, appellant's "speculation" objection was to the previous question, and was sustained. When the State rephrased the question, appellant's objection was different: "Objection as to that print that day."  (RR. III-88).

To preserve a complaint for appellate review, a party must make a timely objection to the trial court stating "the grounds for the ruling ... with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A). In addition, the argument raised on appeal must comport with the specific objection made at trial, or error is waived. *Lovill v. State*, 319 S.W.3d 687, 691 (Tex. Crim. App. 2009); *Cook v. State,* 858 S.W.2d 467, 474 (Tex. Crim. App. 1993); *Curiel v. State,* 243 S.W.3d 10, 19 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd)

Appellant's argument on appeal does not comport with the objection he presented to the trial court. Appellant's claim that the evidence was speculation and his reliance on TEX. R. EVID. 602 for the proposition that a witness may not testify to a matter unless he or she has personal knowledge of the matter is not the same objection made at trial to this question.  *Lankston v. State,* 827 S.W.2d 907, 909 (Tex. Crim. App. 1992); *Purtell v. State,* 761 S.W.2d 360, 365–66 (Tex. Crim. App. 1988).

### 2.  Officer Holmes' testimony was property admitted as the opinion of an expert witness under TEX. R. EVID. 702

Even if appellant had properly objected under Rule 602, he would not prevail, since Officer Holmes' testimony was admissible as the opinion of an expert witness under TEX. R. EVID. 702. After appellant's first "speculation" objection, the State rephrased the question, calling on Officer Holmes' experience and training in crime scene investigation to opine on whether the footprint was old or not. Officer Holmes' answer was tailored to his experience. He did not give a precise date on the age or the print, but merely noted that it had been there long enough to dry, "which typically means a number of hours if not days." (RR. III-88).

If the witness has some special knowledge or additional insight into the field that would be helpful, then the expert can assist the trier of fact to understand the evidence or to determine a fact in issue. *Rogers. v. State,* 205 S.W.3rd 525, 527 (Tex. Crim. App. 2006).[4] A trial court need not exclude expert testimony when the general subject matter is within the comprehension of the average jury, as long as the witness has some specialized knowledge on the topic that will assist the jury. *Coble v. State,* 330 S.W.3d 253, 288 (Tex. Crim. App. 2010). The special knowledge that qualifies a witness to give an expert opinion may be derived from

---

[4] In fact, when a witness who is capable of being qualified as an expert testifies regarding events which he or she personally perceived, the evidence may be admissible as both Rule 701 opinion testimony and Rule 702 expert testimony. *Osbourn v. State*, 92 S.W.3d 531, 536 (Tex. Crim. App. 2002).

specialized education, practical experience, a study of technical works, or a varying combination of these things. *Wyatt v. State,* 23 S.W.3d 18, 27 (Tex. Crim. App. 2000)(quoting *Penry v. State,* 903 S.W.2d 715, 762 (Tex. Crim. App. 1995); *see* TEX. R. EVID. 702. An expert witness's knowledge or experience about an issue must only exceed that of an average juror. *Holmes v. State*, 135 S.W.3d 178, 182 (Tex. App.—Waco 2004, no pet.).

Officer Holmes testified that he had been a police officer for over 25 years, had worked for the Crime Scene Unit since 2009, and had completed a number of classes on crime scene investigation, plus what he had learned from on-the-job training (RR. III-75-76). It was clear from the prosecution's rephrasing of the question that the State was relying on Officer Holmes' experience in crime scene investigations to qualify him to give an opinion as to whether the footprint was fresh or not. Although appellant questions on appeal whether the Officer had proper training on how long it would take mud to dry, he did not challenge the officer's qualifications at trial. *See Finney v. State,* No. 2-02-034-CR, 2003 WL 151972, at 1 (Tex.App.—Fort Worth Jan.23, 2003, pet. ref'd) (mem.op.) (not designated for publication) (holding that when defendant alleged on appeal that the trial court erred in admitting detective's testimony regarding the amount of cocaine normally possessed by an individual for personal use because she was not qualified as an expert, defendant presented nothing for appellate review because defendant

12

objected at trial on ground that the questions called for speculation and did not object to detective's qualifications to give an opinion). In fact, both the State and the defense relied on Holmes' training to elicit opinions on the evidence at the scene, in particular the condition of appellant's door (RR. III-86, 115, 116, 123). Since Officer Holmes testified based on his experience in crime scene investigation, and since appellant made no objection to his testimony on that ground, the trial court did not err in allowing Officer Holmes to answer the question about the age of the footprint on appellant's door.

### 3. Even if appellant had objected and the trial court had abused its discretion in admitting Officer Holmes' testimony, any error would not be reversible.

Erroneous admission of evidence is non-constitutional error and must be disregarded unless it affects substantial rights of the defendant. TEX .R. APP. P. 44.2(b); *Johnson v. State,* 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Substantial rights are not affected by the erroneous admission of evidence if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Motilla v. State,* 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

Appellant argues he was harmed because Officer Holmes' testimony indicated that "the police responders did not believe his version of events." (appellant's brief, p. 13). Yet appellant's claim that Williams and Lewis forced their way into his apartment could have been true regardless of whether this footprint had been there prior to that night. All the State was attempting to establish was that the footprint had been there long enough to dry by the time Officer Holmes inspected it, and how long it might have taken to dry.

Holmes' testimony was cumulative of other testimony, as the State had already established that the ground at the scene of the crime was dry, there was no mud nearby, and that the victim's tennis shoes were clean, indicating that the footprint did not come from him that day (RR. III-88, 89, 99). Tranea Jones also had testified that the footprint was from a week ago, when both she and Lewis heard D kick appellant's door that night (RR. III-146-147, IV-38). Furthermore, appellant was able to cross-examine Officer Holmes about whether the footprint was "muddy" or "dirty," and whether he had done any forensic testing of the footprint to determine the substance of the footprint (RR. III-116-117). Officer Holmes did not try to overreach on his testimony, and even agreed to the following statements about the footprint on appellant's door:

> Q: [by defense counsel]: In fairness to the jury you don't know when that got there, do you?
>
> A: Correct.

Q: And in fairness you don't even know how it got there, do you?

A: Correct.

(RR. III-119). Given the evidence introduced in this case, and the negligible weight this one question might have on the jury's verdict, appellant has not met his burden of establishing that his substantial rights were affected. For all the above reasons, appellant's first point of error is without merit and should be overruled.

## REPLY TO APPELLANT'S SECOND POINT OF ERROR

**The evidence is legally sufficient to support appellant's conviction for murder.**

The standard of review in the present case is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010); TEX. PENAL CODE § 38.04 (West 2011). The jury was the sole judge of the weight of the evidence under this review and could choose to believe all, some, or none of it. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

Evidence can be legally sufficient for a conviction even if it is entirely circumstantial. *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000). The standard of review for circumstantial and direct evidence is the same. *Id*. It is not

necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

A person commits murder if he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.02(b)(2) (West 2011). Intent is a question of fact and therefore within the sole purview of the jury for which the jury may rely on its collective common sense and apply common knowledge and experience. *Brown v. State,* 122 S.W.3d 794, 800 (Tex. Crim. App. 2003); *Rodriguez v. State,* 90 S.W.3d 340, 355 (Tex. App.—El Paso 2001, pet. ref'd). Additionally, intent may be inferred from the circumstantial evidence surrounding the incident, including the acts, words and conduct of the accused. *Patrick v. State,* 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). "The specific intent to kill may be inferred from the use of a deadly weapon." *Godsey v. State,* 719 S.W.2d 578, 580–81 (Tex. Crim. App. 1986).

Intent to kill is not required to commit murder under Section 19.02(b)(2) . *See Medina v. State,* 7 S.W.3d 633, 638 n. 4 (Tex. Crim. App. 1999); *Ramirez v. State,* 229 S.W.3d 725, 729 (Tex. App.-San Antonio 2007, no pet.). It is sufficient

16

to show only the intent to cause serious bodily injury and commit a clearly dangerous act. *Rodriguez v. State,* 146 S.W.3d 674, 676 n. 3 (Tex. Crim. App. 2004); *Forest v. State,* 989 S.W.2d 365, 368 (Tex. Crim. App. 1999) (holding that firing a gun in the direction of an individual is an act clearly dangerous to human life); *Goodin v. State,* 726 S.W.2d 956, 959 (Tex. App –Fort Worth 1987), *aff'd,* 750 S.W.2d 789 (Tex. Crim. App. 1988) (finding intent to cause serious bodily injury from defendant's admission that he pointed a gun at victim and pulled trigger). The test for determining whether an act is clearly dangerous to human life is an objective one. *Lugo-Lugo v. State,* 650 S.W.2d 72, 81 (Tex. Crim. App. 1983). To be clearly dangerous to human life, the act committed need only threaten or risk a resulting death. *Lugo-Lugo,* 650 S.W.2d at 88.

The jury was instructed to convict under either §19.02(b)(1) or §19.02(b)(2) (CR1-287-288). Taking into consideration appellant's actions and conduct, a rational jury could have reasonably inferred that appellant either intended to shoot and kill Williams or that appellant intended to cause serious bodily injury to Williams and committed an act clearly dangerous to human life, namely shooting Williams with a gun.

Appellant had a motive to kill Williams, as they had been arguing all day, to the point where they were exchanging "fighting words" (RR. IV-46). While motive is not an element of the offense of murder, it may be circumstantial

17

evidence of intent. *See Guevara v. State,* 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

Appellant's act of inviting Williams into his home in the middle of this argument was with the apparent intent of having a justification for shooting him. When asked to describe how appellant's invitation sounded, Jones explained "[h]is tone sounded like you come in, basically I'm going to use that as self-defense."(RR. III-159). Sure enough, as soon as Williams crossed the threshold of appellant's apartment, appellant pulled out his gun, cocked it, and announced that Williams was in his home (RR. III-164, IV-56). According to Lewis, Williams backed up, but appellant ran towards him and tried to hit him in the face with the pistol (RR. III-56). Williams grabbed at the pistol, the two struggled for a minute, and the gun fired (RR. III-53). The shot was at close range, hit Williams at a very vulnerable location under his arm and penetrated his heart and lung before exiting the front of his chest (RR.-IV-170, 171, 180). Immediately afterwards, appellant fled the scene, hid his weapon, changed clothes, and eventually left for Dallas, never returning to his apartment (RR. IV-256). Appellant never contacted anyone about the shooting and was still in Dallas a month later when he was arrested (RR. III-271-272, IV-257). *See Gosch v. State,* 829 S.W.2d 775, 783 (Tex. Crim. App. 1991) (holding intent to flee country probative of intent to murder).

18

After his arrest appellant's vastly different explanation of events, which were inconsistent with the statements from the other witnesses, also are evidence of his guilt. *See Couchman v. State,* 3 S.W.3d 155, 163–64 (Tex.App.—Fort Worth 1999, pet. ref'd) (reasoning that a jury can infer that a defendant demonstrated a "consciousness of guilt" by lying about events surrounding the alleged crime); *Winningham v. State,* 334 S.W.3d 289, 309 (Tex.App. –Fort Worth 2010, pet. ref'd) (same).

Appellant testified at trial that he didn't know he had shot the defendant (RR. IV-248). The jury, however, was entitled to disbelieve appellant's testimony, particularly given the evidence of appellant's flight. *Pena v. State*, 441 S.W.3d 635, 641 (Tex. App.—Houston [1 Dist.] 2014, pet. ref'd) (contradictions allowed a reasonable juror to doubt defendant's version of events and conclude that defendant murdered victim and then posed the scene to attempt to indicate a suicide); *Cantu v. State,* 395 S.W.3d 202, 209 (Tex. App—Houston [1st Dist.] 2012, pet. ref'd) (citing "inconsistencies in Cantu's statements" and statements inconsistent with physical evidence as basis for rational juror to doubt Cantu's defensive assertions). Furthermore, it is irrelevant if appellant knew he had actually shot Williams. The act of drawing, cocking, and firing the gun while it was pointed at Williams was sufficient to be an action clearly dangerous to human life. *Godsey v. State,* 719 S.W.2d 578 (Tex. Crim. App. 1986).

Appellant claims that "even the State's own witnesses believed the gun accidentally discharged" (appellant's brief, p. 17). However, neither Jones nor Lewis, the two witnesses to the crime, testified that the shooting was an accident. To the contrary, when asked "when [appellant] ran from the scene, locked his door and ran, do you know why he ran? Do you know why?" Lewis replied "*He murdered somebody.*" (RR. IV-57) (emphasis added). While Williams did struggle to defend himself, Lewis testified that appellant was the aggressor, that he cocked and ran towards Williams with the gun in his hand, that he hit Williams with the gun, and that Williams never grabbed the gun, only appellant's wrist (RR. IV-121, 125, 128). Lewis testified that appellant had possession of the gun at all times, including after the shooting, and that he took the gun with him when he left (RR. IV-129). *See gen. Sloan v. State*, 409 S.W.2d 412, 414 (Tex. Crim. App. 1966) (statement of the witness that 'The gun went off' does not, under all the facts and circumstances, show an accidental killing).

Because there is evidence to support the jury's finding that appellant had the required mental state to cause Williams' death or commit an act clearly dangerous to human life which resulted in his death , the evidence is legally sufficient to support his conviction under Sections 19.02(b)(1) or (2). *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781. Appellant's second point of error is without merit and should be overruled.

## CONCLUSION

It is respectfully submitted that all things are regular and the conviction should be affirmed.

DEVON ANDERSON
District Attorney
Harris County, Texas

/s/ *Kimberly Aperauch Stelter*
KIMBERLY APERAUCH STELTER
Assistant District Attorney
Harris County, Texas
TBC No. 19141400
stelter_kimberly@dao.hctx.net

## CERTIFICATE OF SERVICE AND COMPLIANCE

This is to certify that: (a) the word count function of the computer program used to prepare this document reports that there are 5,471 words in it; and (b) a copy of the foregoing instrument will be served by efile.txcourts.gov to:

Casey Garret
Attorney at Law

1214 Heights Boulevard
Houston, Texas  77008
Casey.garrett@sbcglobal.net

/s/ *Kimberly Aperauch Stelter*
**KIMBERLY APERAUCH STELTER**
Assistant District Attorney
Harris County, Texas
TBC  No. 19141400
stelter_kimberly@dao.hctx.net

Date:  March 3, 2015

22